HUELLMANTEL *v.* TWEDDLE.

FRAUDULENT CONVEYANCES—BILL OF SALE—POSSESSION BY VEN-
DOR—ESTOPPEL OF VENDEE.

Section 9520, 3 Comp. Laws, imposes upon the purchaser of
chattels not immediately delivered the burden as against sub-
sequent purchasers of showing good faith, but neither the
statute nor the common law goes so far as to work an estop-
pel as against the true owner who permits property pur-
chased by himself to remain in the hands of the vendor, in
the absence of anything to indicate that such purchaser had
reason to believe that the vendor was offering or would be
likely to offer the property to another.

Error to Grand Traverse; Mayne, J. Submitted Octo-
ber 22, 1907. (Docket No. 109.) Decided December 10,
1907.

Replevin by Alphonso B. Huellmantel against John J.
Tweddle. There was judgment for plaintiff, and defend-
ant brings error. Reversed.

*J. J. Tweddle* (*Covell & Cross*, of counsel), in pro.
per.

*John A. Loranger*, for appellee.

MONTGOMERY, J. This is an action of replevin brought
in justice's court to recover a set of dray sleighs said to be
of the value of $50. On the trial at the circuit the evi-
dence tended to show the following state of facts: J. D.
Pike & Son were engaged in the coal and wood business
at Traverse City, and had before that time agreed to pur-
chase of plaintiff a quantity of wood, the plaintiff how-
ever retaining the title thereto in his own name. Begin-
ning about the 1st of January, 1905, the plaintiff and
Pike & Son were negotiating for some adjustment of their
transactions, and in the negotiations it would appear that
defendant acted as attorney for Pike & Son. It appeared

that Pike & Son in their dealings with plaintiff ran behind and the result of the negotiations was that on the 12th of January plaintiff made a bill of sale of 660 cords of 4-foot wood, 56 cords of 3-foot wood, and 550 cords of 16-inch wood, a price being fixed upon the wood when disposed of which would leave a margin of 50 cents per cord above cost to apply on the original indebtedness of Pike & Son to plaintiff.

The plaintiff's testimony also tended to show that on the 11th day of January, 1905, Pike & Son had transferred the dray sleighs in question in this case and another set of sleighs to plaintiff for an agreed consideration to be applied on the indebtedness of Pike & Son to plaintiff. On the 12th, by a separate instrument in the form of a property note, Pike & Son agreed to pay on or about April 1st to plaintiff $50, and the recital was made that the note was given for the sale of the sleighs referred to, and that the title to the sleighs should remain in plaintiff until paid for. Pike & Son continued in possession of the property and business as before, although defendant, as will appear later, claims to have taken possession. In the spring Pike & Son appear to have left the State, and defendant took possession of what property was left, including the sleighs in question. Plaintiff brought this action to recover.

Defendant's testimony shows that on the 6th day of January, 1905, for the expressed consideration of $1,000, Pike & Son transferred to defendant and one George Jenne all their property used in their coal and wood business, including the sleighs in question, with a warranty of title as against all claims except of A. B. Huellmantel, Howard Whiting, and C. A. Hammond. The claim of Huellmantel referred to, as appears by the testimony of defendant Tweddle, was the claim of ownership in the wood mentioned in the principal contract of January 12th. The defendant's testimony tended to show that this bill of sale was in consideration of money owing for services and obligations surrendered by himself and Jenne, and that

the bill of sale was absolute.  He states that he took over possession, but as a matter of fact no change of possession ever took place which was open to observation by the public.  The bank account remained with J. D. Pike & Son, the business was conducted in the name of and by J. D. Pike & Son; the only connection which the defendant had with the business was apparently by way of direction through J. D. Pike & Son.

Plaintiff claims that because of Tweddle's relations to Pike & Son in their dealings with plaintiff, and because of his knowledge that plaintiff was endeavoring to secure himself for what was due from Pike & Son, that he ought to be held estopped from asserting that the conveyance to him secretly should have priority over the transfer made a few days later by Pike & Son to plaintiff, and the case finally went to the jury upon the question of estoppel, the circuit judge charging the jury,—

"The principle of estoppel is this: That where the true owner, that is, where there has been a sale of the property, as claimed in this case, and where the true owner holds out another, or allows him to appear as the owner of, or as having full power of disposal over the property, and innocent third parties are thus led into dealing with such apparent owner, they will be protected. Their rights in such cases do not depend upon the actual title or authority of the party with whom they deal directly, but are derived from the acts of the real owner which precludes him from disputing, as against them, the existence of the title or power, which, through negligence or mistaken confidence, he caused or allowed to appear to be vested in the party making the conveyance.   *   *   *

"Now, two things must concur to create an estoppel by which an owner may dispose of his property by the act of the third party without his assent, under the rule now being considered:  *First*, the owner, and in this case that is Mr. Tweddle, must clothe the person assuming to dispose of the property with the apparent title or the authority to dispose of it.   *Second*, the person alleging the estoppel must have acted and parted with value upon the faith of such apparent ownership or authority.

"In this case if you find that plaintiff entered into a new contract, a contract different in terms, that of itself

would be a sufficient consideration, so that he will be the loser if the appearances to which he trusted are not real. It will be for you to determine whether he will be the loser if the appearances as to the title to the property are not real. That is, will he, plaintiff, suffer anything by reason of defendant allowing J. D. Pike & Son to hold out the property as theirs, or leaving it in their possession after he had bought it."

Upon which instruction error is assigned.

It was not left to the jury to determine as to whether defendant's knowledge of the negotiations between plaintiff and Pike & Son was such as to lead an ordinarily prudent man to expect that plaintiff was seeking and Pike & Son was tendering security upon the property covered by defendant's bill of sale. Under the instructions given the jury might have found that the mere fact that there was no change of possession as to the property covered by defendant's bill of sale constituted a sufficient holding out of Pike & Son as possessed of the title to work an estoppel and defeat plaintiff's right wholly. This is a mistaken view of the law. The statute, 3 Comp. Laws, § 9520, does impose upon the purchaser of goods and chattels not immediately delivered the burden as against subsequent purchasers of showing good faith. But neither the statute nor the rule of the common law goes so far as to work an estoppel as against the true owner who permits property purchased by himself to remain in the hands of the vendor in the absence of anything to indicate that such purchaser had reason to believe that his vendor was offering or would be likely to offer the property to another. *Barney* v. *Rutledge*, 104 Mich. 289; *Nichols* v. *Monjeau*, 132 Mich. 582; *McGinley* v. *Brechtel* (Neb.), 95 N. W. 32.

The other questions presented are not likely to arise on another trial. The judgment is reversed, with costs, and a new trial ordered.

GRANT, BLAIR, OSTRANDER, and HOOKER, JJ., concurred.